UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN ADMIRALTY

CASE NO.: 1:20-CV-24975

GEORGINA LINDSAY, on her own behalf and on behalf of all other similarly situated seafarers working aboard M/Y LIONESS V,

                    Plaintiffs,

vs.

M/Y LIONESS V, a 2006 Azimut Benetti motor yacht bearing IMO No. 1007990, Official No. 71291, her engines, tackle, rigging, boilers, apparel, appurtenances, dinghies, furniture, etc., *in rem*, and GLOBAL YACHT HOLDINGS LTD., a foreign corporation, as owner of the M/Y LIONESS V,

                    Defendants.                             /

**CLASS ACTION**
*IN REM*

## SEAFARERS' VERIFIED COMPLAINT TO ENFORCE PREFERRED MARITIME LIEN UNDER 46 U.S.C. § 31301(5)(D) FOR UNPAID WAGES AND PENALTIES, UNSEAWORTHINESS, AND MAINTENANCE AND CURE

Plaintiff, GEORGINA LINDSAY, on her own behalf and on behalf of all other similarly situated crewmembers working aboard M/Y LIONESS V (hereinafter collectively referred to as "Plaintiffs"), hereby sues the Defendants and states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.      Pursuant to 46 U.S.C. § 31301(5)(D), this case involves a seafarers' *preferred* maritime lien for unpaid wages of the crew of the M/Y LIONESS V, which is currently docked in the navigable waters of this District, but expected to depart by **December 10, 2020**.[1]

---

[1] M/Y LIONESS V is at risk of fleeing the jurisdiction and leaving Plaintiffs without recourse to enforce their maritime lien for unpaid wages, penalties, and damages exceeding $743,000 and growing.

2.      The crewmembers of the M/Y LIONESS V have not been paid their full earned and due wages since March 2020.

3.      At all material times, Plaintiff, GEORGINA LINDSAY, was and is a citizen of the United Kingdom, employed as a seafarer aboard the M/Y LIONESS V.

4.      Plaintiff, GEORGINA LINDSAY has not been paid the wages earned and due to her in an amount of approximately $25,000, and growing.

5.      Plaintiffs bring this action under the special rule for seamen to sue for wages without security and prepayment of fees under 28 U.S.C. §1916.

6.      Defendant M/Y LIONESS V, *in rem* (the "Vessel"), is a 2006 208-foot Azimut Benetti motor yacht bearing IMO No. 1007990, Official No. 71291, registered in the Marshall Islands.

7.      The Vessel is currently docked in Miami, Florida, within this District, but expected to depart by December 10, 2020.

8.      At all material times, and upon information and belief, Defendant GLOBAL YACHT HOLDINGS LTD., is a foreign corporation, organized and existing under the laws of the Marshall Islands.

9.      This case is within this Court's Admiralty and Maritime jurisdiction within the meaning of U.S. Const. Art. III § 2, 28 U.S.C. §1333, Fed. R. Civ. P. Rule 9(h), Supplemental Rule C and Local Admiralty Rule C.

10.     Plaintiffs' *in rem* claims—against the Vessel—arise under the General Maritime Law of the United States, and due to violations of the Seaman's Wage Act (46 U.S.C. §§ 10313, 10504), the Forced Labor Civil Remedy Statute (18 U.S.C. §1595), the Fair Labor Standards Act

(29 U.S.C. §201), and under 46 U.S.C. §31301(5)(D) to enforce their preferred maritime lien for seafarers' unpaid wages.

11.　　Plaintiffs also have *in rem* claims against the Vessel for unseaworthiness and for maintenance and cure under the General Maritime Law of the United States because the Vessel was not reasonably fit for its intended purpose and over 25 percent of the crewmembers has become ill with Covid-19 while working on board.

12.　　Plaintiffs' actions *in rem* may be brought "[t]o enforce any maritime lien," and need not be exclusive of any action brought *in personam* against the owner, possessor, or controller of the Vessel.  Supplemental Rule C(1).

13.　　Plaintiffs' *in personam* claims—against GLOBAL YACHT HOLDINGS LTD., arise under the General Maritime Law of the United States, due to violations of the Seaman's Wage Act (46 U.S.C. §§ 10313, 10504), the Forced Labor Civil Remedy Statute (18 U.S.C. §1595), the Fair Labor Standards Act (29 U.S.C. §201), the Jones Act, 46 U.S.C. § 30104, and the doctrines of unseaworthiness and maintenance and cure.

14.　　This matter is brought as a class action under Fed. R. Civ. P. 23(b).  In the event that class status is not certified, then this matter is brought under the admiralty and maritime jurisdiction of this Court, the Seaman's Wage Act (46 U.S.C. §§ 10313, 10504), and 18 U.S.C. §1595 (Forced Labor Civil Remedy Statute).

15.　　 This Court has personal jurisdiction over Defendant GLOBAL YACHT HOLDINGS LTD., because of its systematic and continuous contact with the forum, particularly forcing the crew to work on the Vessel without pay on Florida's navigable waters, violating the Seaman's Wage Act, 46 U.S.C. §§ 10313, 10504 within the state of Florida, entering into a contract within the state of Florida, and committing tortious acts within the State of Florida.

16.     Venue is proper in this forum because M/Y LIONESS V is located in Miami, Florida, within the waters of this District; and the maritime torts and breaches of the Plaintiffs' employment contracts giving rise to Plaintiffs' claims and maritime lien occurred in this District.

## FACTS COMMON TO ALL COUNTS

17.     This action pertains to Defendants' failure to pay seafarers' wages, breach of contract, forced labor, failure to provide a safe and seaworthy Vessel, exposing the crew to Covid-19, and failure to provide maintenance and cure to Covid-19-positive seafarers.

18.     At all material times, an employer-employee relationship existed between Defendants and Plaintiffs because Defendants controlled Plaintiffs' work aboard the Vessel.

     a.  Plaintiff GEORGINA LINDSAY was employed by Defendants to work as a seafarer in the capacity of Chief Officer (second-in-command) aboard the Vessel.

19.     Plaintiff GEORGINA LINDSAY and the class she seeks to represent worked aboard the Vessel, during the period from March 1, 2020 through the present, during which, by agreement, they earned daily wages for the work they performed as seafarers.

20.     Despite working the aforesaid days, Plaintiffs were not paid their complete earned wages in accordance with their employment agreements.

21.     Defendants' failure to pay the Plaintiffs was a violation of law and the contracts of employment.

22.     At all material times, Plaintiffs were "seamen" aboard the Vessel, as the term "seaman" is defined under the Jones Act, 46 U.S.C. § 30104, the Seaman's Wage Act, 46 U.S.C. §§ 10313, 10504, and the General Maritime Law of the United States.

23.     Seafarers are "emphatically the wards of the admiralty." *Harden v. Gordon*, 11 F.Cas. 480, 485 (C.C.D. Me. 1823) (No. 6,047) (Story, J.).

24.     Plaintiffs are seafarers who worked aboard the Vessel, were vulnerable to the exploitation of Defendants, and were forced to continue working in unseaworthy conditions and without full wages since March 2020.

25.     Defendants control the availability and terms of Plaintiffs' employment, thereby widening the inequality in bargaining position between the Defendants and the seafarer Plaintiffs by refusing to pay full wages since March 2020 and forcing the Plaintiffs to continue to work on board the Vessel, in unseaworthy conditions, without full wages.

26.     Claim is made for the continuing failure to pay the wages the crewmember Plaintiffs are earning going forward from the date of this action.

## CLASS ACTION ALLEGATIONS

27.     This action is brought by Plaintiff GEORGINA LINDSAY, on her own behalf and on behalf of all other similarly situated seafarers working aboard M/Y LIONESS V, under the provisions of Fed. R. Civ. P. 23(a) and 23(b)(3).

28.     The proposed class is composed of seafarers who worked aboard the Vessel from March 1, 2020 through the present, and into the future for as long as the harm claimed herein continues, and who were and will be covered by the terms and conditions of their employment as agreed between the seafarers and the Defendants to be paid wages for their service as seafarers. Their wages continue to be unpaid.

29.     At all material times, Plaintiffs have been forced to continue working aboard the Vessel without pay, subject to the unlawful withholding, delay, and nonpayment of their seafarers' wages.

30.     Plaintiffs have sustained lost wages and lost employment opportunities as a result of Defendants' failure to pay the Plaintiffs' seafarers' wages, in breach of Plaintiffs' employment contracts, and requiring Plaintiffs to work aboard the Vessel without pay.

31.     At this time, it is estimated that there are 23 crewmembers with a preferred maritime lien for unpaid wages.

32.     To date, at least 6 crewmembers have become infected with Covid-19 aboard the Vessel.

33.     This is not an isolated incident of unpaid wages and forced labor under unseaworthy conditions.  These seafarers all have a common preferred maritime lien against the same Vessel for unpaid crew wages under the same terms and conditions.  Therefore, this action satisfies the requirements of Rule 23(a)(1).

34.     There are questions of law and fact common to the class because all Plaintiffs are crewmembers who are owed unpaid wages for work performed as seafarers on the Vessel, and the relief sought is common to the entire class.  The same misconduct on the part of Defendants caused the same or similar injury to each class member.  All class members seek damages under the Seaman's Wage Act (46 U.S.C. §§ 10313, 10504), the Forced Labor Civil Remedy Statute (18 U.S.C. §1595), the Fair Labor Standards Act (29 U.S.C. §201), the Jones Act, 46 U.S.C. § 30104, and the General Maritime Law of the United States.  Therefore, this action satisfies the requirements of Rule 23(a)(2).

35.     The Plaintiffs' claims are not only typical, but the same, for all members of the class, based upon Defendants' failure to pay seafarers' wages, breach of contract, forced labor, failure to provide a safe and seaworthy Vessel, exposing the crew to Covid-19, and failure to provide maintenance and cure to Covid-19-positive seafarers.  Plaintiffs suffered the same injury,

and their claims arise from the same events and practices and are based on the same legal theories.  Therefore, this action satisfies the requirements of Rule 23(a)(3).

36.     GEORGINA LINDSAY, as representative for the class, will fairly and adequately protect the interests of the class because she was employed as the Chief Officer on board the Vessel (second in command), and she shares standing with the rest of the class.  There is no conflict between Plaintiff and other crewmembers of the class with respect to this action, or the relief sought.  Plaintiffs are all seeking to recover their unpaid wages.  Consequently, in pursuit of her own self-interest, GEORGINA LINDSAY will ardently litigate against Defendants, thereby advancing the cause of the class members.  Therefore, this action satisfies the requirements of Rule 23(a)(4).

37.     Common issues predominate and can be determined on a class-wide basis regarding Defendants' failure to pay seafarers' wages, breach of contract, forced labor, failure to provide a safe and seaworthy Vessel, exposing the crew to Covid-19, and failure to provide maintenance and cure to Covid-19-positive seafarers.

38.     Questions of law and fact common to all members of the class predominate over any questions affecting only individual members, including Defendants' breach of the seafarer Plaintiffs' employment agreements since March 2020; Defendants' failure to pay full wages due their seafarers since March 2020 without sufficient cause, and whether Plaintiffs are entitled to the payment of these wages as well as penalties, punitive damages, and attorneys' fees.

39.     A class action is superior to other methods for the fair and efficient adjudication of this controversy because it is unlikely that individual Plaintiffs, all of which are foreign seafarers, who are owed thousands of dollars in unpaid wages, would be able to file separately due to financial hardship or lack of knowledge that a cause of action exists.

40.     Additionally, a class action is a superior method of seeking relief because so many members of the class fear retaliation from Defendants with respect to their present and future employment.

41.     Moreover, GEORGINA LINDSAY, as representative for the class, is not aware of any crewmembers who are interested in individually pursuing a separate action.  The interests of justice will be served by resolving the common disputes of the class members (all crewmembers on the same Vessel) with Defendants in a single forum once the Vessel is arrested in the jurisdiction.  Individual actions by individual crewmembers would not be cost effective. The class consists of a finite and identifiable number of crewmembers which will make the matter manageable as a class action and avoid piecemeal litigation.  Therefore, this action satisfies the requirements of Rule 23(b)(3).

42.     The amount of unpaid wages due Plaintiffs and the class as of the date of the filing of this Complaint is estimated to be approximately $371,814, and continues to increase daily and accrue compounded interest.

## COUNT I – WAGES AND PENALTIES 46 U.S.C. §§ 10313, 10504 AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

43.     This is an *in rem* action to enforce seafarers' preferred maritime lien for unpaid crew wages for Plaintiffs' labor aboard the M/Y LIONESS V.

44.     At all material times, Plaintiffs were employed as seafarers aboard the Vessel, as members of the crew, and duly performed their duties as crewmembers and accrued earned wages payable pursuant to contracts of employment with the Defendants.  In addition, Plaintiffs were entitled to fringe benefits including, but not limited to, food, lodging, medical care, uniforms, vacation, and a free airline ticket home and back.

45.     Plaintiffs made demands to Defendants for payment of all earned wages.

46.     Notwithstanding Defendants' obligations to the Plaintiffs, Defendants failed to pay full wages due to the Plaintiffs, in breach of the contracts of employment, and in violation of the general maritime law and the Seaman's Wage Act (46 U.S.C. §§10313, 10504).

47.     Defendants' withholding of wages is unreasonable, arbitrary, willful and therefore without sufficient cause.

48.     Under 46 U.S.C. §§10313, 10504, Plaintiffs are entitled to their earned wages, and two days' wages for each day payment is delayed.

49.     Seafarers asserting a maritime lien for unpaid wages can seize a vessel upon filing a complaint.  Under U.S. maritime law, seamen's wage liens are accorded "sacred" status:

> Seamen's wages, 'according to the favorite saying of Lord Stowell and of Mr. Justice Story, are ***sacred liens***, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages.'

*The John G. Stevens*, 170 U.S. 113, 119 (1898) (emphasis added).

50.     The creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the res.  *See The Bold Boccleaugh*, 7 Moo. PC 282, 13 Eng.Rep. 884 (1851); 7A Moore's Fed.Prac. ¶ C.03 (1983).

51.     Defendants' refusal to pay Plaintiffs' wages, in violation of the Seaman's Wage Act, creates a preferred maritime lien against the Vessel *in rem* for each seafarer who is owed unpaid wages.

**WHEREFORE,** Plaintiffs respectfully request:

a. That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

b. That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

c. That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, punitive damages, wage penalties, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

d. That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S. Marshal's sale.

## COUNT II – BREACH OF CONTRACT AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

52.    This is an *in rem* action to enforce seafarers' preferred maritime lien for unpaid crew wages in breach of the Plaintiffs' employment contracts with Defendants.

53.    Under the General Maritime Law, Plaintiffs may bring *both* a Seaman's Wage Act claim and a breach of contract claim .  These two claims are not duplicative and the remedies of the two are not identical. *See Brown v. Royal Caribbean Cruises, Ltd.,* No. 99-11774, 2000 WL 34449703 *1, *9 (S.D.N.Y. Aug. 24, 2000).

54.     At all material times, Plaintiffs were employed as seafarers aboard the Vessel, as members of the crew, and duly performed their duties as crewmembers and accrued earned wages payable pursuant to contracts of employment with the Defendants.  In addition, Plaintiffs were entitled to fringe benefits including, but not limited to, food, lodging, medical care, uniforms, vacation, and a free airline ticket home and back.

55.     Plaintiffs made demands to Defendants for payment of all earned wages.

56.     Notwithstanding Defendants' obligations to the Plaintiffs, Defendants failed to pay full wages due to the Plaintiffs, in breach of the contracts of employment, and in violation of the general maritime law of the United States.

57.     Defendants' withholding of wages is unreasonable, arbitrary, willful and therefore without sufficient cause.

58.     Seafarers asserting a maritime lien for unpaid wages can seize a vessel upon filing a complaint.  Under U.S. maritime law, seamen's wage liens are accorded "sacred" status:

> Seamen's wages, 'according to the favorite saying of Lord Stowell and of Mr. Justice Story, are **sacred liens**, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages.'

*The John G. Stevens*, 170 U.S. 113, 119 (1898) (emphasis added).

59.     The creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the res.  *See The Bold Boccleaugh*, 7 Moo. PC 282, 13 Eng.Rep. 884 (1851); 7A Moore's Fed.Prac. ¶ C.03 (1983).

60.     Defendants' refusal to pay Plaintiffs' wages, in breach of the contracts of employment, creates a preferred maritime lien against the Vessel *in rem* for each seafarer who is owed unpaid wages.

**WHEREFORE,** Plaintiffs respectfully request:

a.  That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

b.  That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

c.  That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, punitive damages, wage penalties, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

d.  That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S. Marshal's sale.

## COUNT III – FORCED LABOR 18 U.S.C. §1595 AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

61.    This is an *in rem* action to enforce seafarers' preferred maritime lien for unpaid crew wages and a civil remedy for forced labor aboard the Vessel without pay.

62.    Pursuant to 18 U.S.C. §1595 (a) an individual who is a victim of "forced labor" and/or "peonage" may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act of forced labor and/or peonage) in an

appropriate district court of the United States and may recover damages and reasonable attorney's fees.

63.     At all times material, Defendants controlled the availability and terms of Plaintiffs' employment, refused to pay full wages, and forced Plaintiffs to continue to work on board the Vessel, in unseaworthy conditions, without full wages.

64.     Plaintiffs are seafarers who worked aboard the Vessel, were vulnerable to the exploitation of Defendants, and were forced to continue working in unseaworthy conditions, and without full wages.

65.     Defendants knowingly and deliberately deprived Plaintiffs of their full wages, but continued to require Plaintiffs to perform duties aboard the Vessel.

66.     Defendants benefited financially by continuously forcing the Plaintiffs to work aboard the Vessel without pay, subject to the unlawful withholding, delay, and nonpayment of their seafarers' wages.  This is tantamount to forced labor and peonage.

67.     Defendants intended to and coerced Plaintiffs to work without pay, subjecting them to involuntary servitude.

68.     Defendants' unlawful conduct intended for and caused Plaintiffs to believe that they had no alternative but to perform the forced labor.

69.     Plaintiffs fear retaliation from Defendants with respect to their present and future employment.

70.     Defendants knowingly derived substantial financial benefit by not paying the Plaintiffs their full wages since March 2020 and continue to derive a substantial financial benefit because the seafarers' wages remain unpaid.

71.     Seafarers asserting a maritime lien for unpaid wages can seize a vessel upon filing a complaint.  Under U.S. maritime law, seamen's wage liens are accorded "sacred" status:

> Seamen's wages, 'according to the favorite saying of Lord Stowell and of Mr. Justice Story, are **sacred liens**, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages.'

*The John G. Stevens*, 170 U.S. 113, 119 (1898) (emphasis added).

72.     The creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the res.  *See The Bold Boccleaugh*, 7 Moo. PC 282, 13 Eng.Rep. 884 (1851); 7A Moore's Fed.Prac. ¶ C.03 (1983).

73.     Defendants' refusal to pay Plaintiffs' wages renders the Plaintiffs victims of "forced labor" and/or "peonage" capable of recovering damages and reasonable attorney's fees and creates a preferred maritime lien against the Vessel *in rem* for each seafarer who is owed unpaid wages.

**WHEREFORE**, Plaintiffs respectfully request:

a. That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

b. That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

c. That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, punitive damages, wage penalties, court costs, pre-

and post-judgment interest, attorneys' fees, and such other relief as the Court

deems just; and

d.   That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S.

Marshal's sale.

## COUNT IV – WAGES AND PENALTIES -29 U.S.C. §201 *ET SEQ.* AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

74.     This is an *in rem* action to enforce seafarers' preferred maritime lien for unpaid

crew wages in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. §201 *et seq.*

75.     At all material times, Plaintiffs were employed as seafarers aboard the Vessel, as

members of the crew, and duly performed their duties as crewmembers and accrued earned

wages payable pursuant to contracts of employment with the Defendants.  In addition, Plaintiffs

were entitled to fringe benefits including, but not limited to, food, lodging, medical care,

uniforms, vacation, and a free airline ticket home and back.

76.     Plaintiffs made demands to Defendants for payment of all earned wages.

77.     The FLSA requires wages to be paid regularly and on time.

78.     Notwithstanding Defendants' obligations to the Plaintiffs, Defendants failed to

pay full wages due to the Plaintiffs, in breach of the contracts of employment, and in violation of

the general maritime law and the FLSA 29 U.S.C. §201 *et seq.*

79.     Under 29 U.S.C. §§206 and 216, Plaintiffs are thus entitled to judgment in their

favor under these statutes in the amount of their unpaid wages, plus penalties equal to the amount

of their unpaid wages, plus attorneys' fees and costs.

80.     Seafarers asserting a maritime lien for unpaid wages can seize a vessel upon filing

a complaint.  Under U.S. maritime law, seamen's wage liens are accorded "sacred" status:

> Seamen's wages, 'according to the favorite saying of Lord Stowell and of Mr. Justice Story, are ***sacred liens***, and, as long as a plank of the ship remains, the sailor is entitled, against all other persons, to the proceeds as a security for his wages.'

*The John G. Stevens*, 170 U.S. 113, 119 (1898) (emphasis added).

81.     The creation of a maritime lien requires no judicial action; the lien is a right of the injured party which arises at the moment of the breach or tort and attaches to the res.  *See The Bold Boccleaugh*, 7 Moo. PC 282, 13 Eng.Rep. 884 (1851); 7A Moore's Fed.Prac. ¶ C.03 (1983).

82.     Defendants' refusal to pay Plaintiffs' wages, in violation of the FLSA, entitles them to double damages (unpaid wages, plus penalties equal to that amount), plus attorneys' fees and costs, thus creating a preferred maritime lien against the Vessel *in rem* for each seafarer who is owed unpaid wages.

**WHEREFORE,** Plaintiffs respectfully request:

a.  That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

b.  That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

c.  That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, wage penalties, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

d.  That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S. Marshal's sale.

## COUNT V – NEGLIGENCE UNDER THE JONES ACT 46 U.S.C. § 30104 AGAINST GLOBAL YACHT HOLDINGS LTD.

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

83.     At all material times, Plaintiffs were employed by Defendant GLOBAL YACHT HOLDINGS LTD. as seafarers, and crewmembers in the service of the Vessel upon navigable waters.

84.     The Jones Act provides a cause of action in negligence for "a seaman injured in the course of employment."  46 U.S.C. § 30104.

85.     GLOBAL YACHT HOLDINGS LTD. had a duty to provide Plaintiffs with a reasonably safe place to work.

86.     The Vessel is required to comply with the International Safety Management Code ("ISM"), which mandates that foreign vessels departing from a United States jurisdiction on a voyage on the high seas develop a Safety Management System ("SMS") that provides safeguards against all identified risks.  46 U.S.C. § 3202(a)(2)(B); 33 C.F.R. § 96.230(b).

87.     GLOBAL YACHT HOLDINGS LTD. failed to conduct an adequate risk assessment for Covid-19 aboard the Vessel.

88.     During the course and scope of their employment aboard the Vessel, Plaintiffs were exposed to Covid-19, and at least 6 crewmembers, including GEORGINA LINDSAY, have tested positive for Covid-19 and are suffering fever, body aches and pains, and the loss of the senses of smell and taste due to the illness.

17

89.     Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 became ill through exposure to Covid-19-infected outside guests who came on board the Vessel for gatherings and parties at GLOBAL YACHT HOLDINGS LTD.'s behest.

90.     Plaintiffs are entitled to a reasonably safe place to work—including protection from Covid-19.

91.     At least 6 crewmembers are known to have contracted Covid-19 to date, but all Plaintiffs continue to be exposed to the virus due to GLOBAL YACHT HOLDINGS LTD.'s failure to provide a safe workplace to its crewmembers assigned to work aboard the Vessel and protect them from Covid-19.

92.     The danger and high rate of contagion of Covid-19 is well known, and GLOBAL YACHT HOLDINGS LTD. knew or should have known of the hazardous condition to which it was exposing the crew by allowing and inviting untested outside guests to come aboard the Vessel for parties and social gatherings without protective face gatherings and not practicing social distancing from the crew and each other.

93.     Furthermore, GLOBAL YACHT HOLDINGS LTD. forced its crewmembers to work at the onboard parties and gatherings and entertain outside guests by serving them and waiting on them.

94.     GLOBAL YACHT HOLDINGS LTD. failed to follow safety guidelines on board, such as timely quarantining infected crewmembers and practicing social distancing.

95.     The dangerous conditions associated with Covid-19 include fever, dry cough, shortness of breath, pneumonia, acute respiratory distress syndrome (ARDS), septic shock, multi-organ failure, and the high fatality rate associated with contracting the virus.

96.     The long term effects of Covid-19 are not fully known.

97.     As a result of its careless conduct, GLOBAL YACHT HOLDINGS LTD. is not maintaining the Vessel in a reasonably safe condition, and instead negligently exposed, and continues to expose, its crew to Covid-19.

98.     Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 became ill due to the fault and negligence of GLOBAL YACHT HOLDINGS LTD., and/ or its agents, servants, and/or employees as follows:

    a.  Failure to provide a reasonably safe place to work;

    b.  Failure to maintain the Vessel in a reasonably safe condition;

    c.  Manning the Vessel with insufficient crew;

    d.  Failure to promulgate and enforce reasonable rules and regulations to ensure the health, safety, and welfare of the crew while engaged in the course of their employment on the Vessel;

    e.  Failure to learn and apply proper quarantine principles to isolate infected crew;

    f.  Failure to learn and apply common and well known social distancing guidelines on board the Vessel;

    g.  Failure to investigate the hazards Plaintiffs were exposed to, take necessary steps to eliminate the hazards, minimize the hazards and/or warn of the hazard;

    h.  Failure to implement the occupational safety and health provisions of the Maritime Labour Convention, 2006;

    i.  Failure to promptly, properly, and adequately diagnose and treat the crewmembers infected with Covid-19 as it continued to develop, worsen, and spread; and/or

    j.  Failure to take all reasonable precautions to prevent the injuries to Plaintiffs.

99.     GLOBAL YACHT HOLDINGS LTD. knew of the foregoing conditions and did not correct them, or the conditions existed for a sufficient length of time so that GLOBAL YACHT HOLDINGS LTD. in the exercise of reasonable care should have learned of them and corrected them.

100.     As a direct and proximate result of GLOBAL YACHT HOLDINGS LTD.'s negligence, Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 were injured about their bodies and extremities, suffered physical pain and suffering, mental anguish, anxiety, fright, shock, loss of enjoyment of life, reasonable fear of developing future physical and medical problems, insecurity, aggravation of any previously existing condition, feelings of economic insecurity caused by the illness, inconvenience in the normal pursuits and pleasures of life, incurred medical expenses, lost wages, and their working ability and earning capacity have been impaired.  The injuries are permanent and continuing in nature, and Plaintiffs will continue to suffer these losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with the job, including but not limited to found, free medical care, free uniforms, vacation, and a free airline ticket home and back.

**WHEREFORE,** Plaintiffs demand judgment against Defendant GLOBAL YACHT HOLDINGS LTD. *in personam* together with all compensatory damages and other relief this Honorable Court deems just and proper.

## COUNT VI – UNSEAWORTHINESS UNDER THE GENERAL MARITIME LAW AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

101.    At all material times, Plaintiffs were employed as seafarers and crewmembers aboard the Vessel, upon navigable waters.

102.    At all material times GLOBAL YACHT HOLDINGS LTD. owned, managed, operated, and/or controlled the Vessel to which the Plaintiffs were assigned to work as seafarers.

103.    GLOBAL YACHT HOLDINGS LTD. had an absolute, non-delegable duty to provide Plaintiffs with a seaworthy Vessel.

104.    As a result of the unseaworthiness of the Vessel, the Plaintiffs continue to be exposed to Covid-19 on board, and at least 6 crewmembers, including GEORGINA LINDSAY, have already tested positive and contracted Covid-19.

105.    The Vessel's unseaworthiness was a legal cause of injury and damage to Plaintiffs by reason of the following:

    a.    The Vessel was not reasonably fit for its intended purpose;

    b.    The Vessel did not have adequate manpower for the tasks being performed;

    c.    The Vessel was unsafe and unfit due to conditions created by GLOBAL YACHT HOLDINGS LTD., such as inviting outside guests for parties on board and forcing the crew to wait on and serve these guests without face coverings and social distancing; and/or

    d.    The Vessel's crew was not properly trained, instructed or supervised.

106.    As a direct and proximate result of the Vessel's unseaworthiness, the Plaintiffs were injured about their bodies and extremities, suffered physical pain and suffering, mental anguish, anxiety, fright, shock, loss of enjoyment of life, reasonable fear of developing future

physical and medical problems, insecurity, aggravation of any previously existing condition, feelings of economic insecurity caused by the illness, inconvenience in the normal pursuits and pleasures of life, incurred medical expenses, lost wages, and their working ability and earning capacity have been impaired.  The injuries are permanent and continuing in nature, and Plaintiffs will continue to suffer these losses and impairments in the future.  In addition, Plaintiffs in the past and in the future have lost the fringe benefits that come with the job, including but not limited to found, free medical care, free uniforms, vacation, and a free airline ticket home and back.

> **WHEREFORE,** Plaintiffs respectfully request:

> a.  That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

> b.  That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

> c.  That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, wage penalties, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

> d.  That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S. Marshal's sale.

## COUNT VII – FAILURE TO PROVIDE MAINTENANCE AND CURE AGAINST ALL DEFENDANTS

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

22

107.     Plaintiffs were injured while in the service of the Vessel upon navigable waters.

108.     Under the General Maritime Law of the United States, Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19, are entitled to receive maintenance and cure until they are unequivocally declared to have reached maximum medical improvement ("MMI").

109.     Maintenance and cure is an ancient legal duty that obligates the employer to provide for a seafarer who becomes ill or injured in the service of the ship.  *See Vaughan v. Atkinson*, 369 U.S. 527, 531 (1962).  "Maintenance" includes a living allowance for food and lodging while "cure" refers to medical treatment.  *Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 413 (2009).

110.     This includes unearned wages (regular wages, overtime, vacation pay and tips), which were reasonably anticipated to the end of the contract or voyage, whichever is longer.

111.     Defendants willfully and callously delayed, failed and refused to pay full maintenance for the crewmembers who have become ill and refused to provide them the level of cure they need so that Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 have become obligated to pay the undersigned a reasonable attorneys' fee.

112.     An MMI declaration must be unequivocal, and any doubts or controversy regarding whether or not the seafarer is at MMI must be resolved in favor of the seafarer.

113.     Defendants' failure to provide entire maintenance and cure to Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 is willful, arbitrary, capricious, in violation of the law, and in callous disregard for seafarers' rights. As such, Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who

contracted Covid-19 would be entitled to attorneys' fees under the General Maritime Law of the United States.  Furthermore, Defendants unreasonably failed to provide Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 with maintenance and cure which aggravated their condition and caused them to suffer additional compensatory damages, including but not limited to the aggravation of the illness, pain and suffering, reasonable fear of developing future medical problems, mental anguish, loss of enjoyment of life, feelings of economic insecurity as well as lost earnings or earning capacity, and medical and hospital expenses in the past and in the future.

**WHEREFORE,** Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 respectfully request:

    a. That a Warrant for Arrest *in rem* issue against M/Y Lioness V and that all persons claiming any interest therein may be cited to appear and answer the matters aforesaid;

    b. That Plaintiffs be decreed to have a lien upon the *in rem* Defendant M/Y Lioness V, and that such lien be foreclosed in accordance with law and thereupon that the Vessel be condemned and sold in payment of the damages suffered by Plaintiffs and others similarly situated;

    c. That judgment be entered in Plaintiffs' favor for all damages, including compensatory damages, punitive damages, wage penalties, court costs, pre- and post-judgment interest, attorneys' fees, and such other relief as the Court deems just; and

    d. That Plaintiffs be permitted to bid this judgment against the Vessel at a U.S. Marshal's sale.

**COUNT VIII – FAILURE TO TREAT AGAINST GLOBAL YACHT HOLDINGS LTD.**

Paragraphs one (1) through forty-two (42) are re-alleged and incorporated herein.

114.     Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 were employed by GLOBAL YACHT HOLDINGS LTD. as seafarers and crewmember aboard the Vessel on navigable waters.

115.     It was GLOBAL YACHT HOLDINGS LTD.'s duty to provide Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 with prompt, proper and adequate medical care when they became ill and required medical care.

116.     GLOBAL YACHT HOLDINGS LTD. failed to provide prompt, proper, adequate, and complete medical care to GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19.

117.     GLOBAL YACHT HOLDINGS LTD. negligently sent GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 back to work after they reported symptoms without adequately determining the health risks of sending them back to work.

118.     As a direct and proximate result of GLOBAL YACHT HOLDINGS LTD.'s failure, GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 suffered additional pain and suffering, and their recovery has been needlessly prolonged.  In addition, Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 have been injured about their bodies and extremities, suffered physical pain and suffering, mental anguish, reasonable fear of developing future physical and medical problems, loss of enjoyment of life, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity caused by the illness, aggravation of any

previously existing conditions, incurred additional medical expenses in the care and treatment of the illness, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity have been impaired. The injuries and damages are permanent and continuing in nature, and they will suffer the losses and impairments in the future.

119.     This Count is alleged separately from the Jones Act Negligence count.  *See, e.g.*, *Fitzgerald v. A.L. Burbank & Co.*, 451 F.2d 670, 679 (2d Cir. 1971) ("The maritime law has long imposed upon shipowners the duty to provide proper medical treatment for seamen . . . suffering injury in the service of the ship," and violation of this duty is actionable under the Jones Act.). *Accord  Joyce v. Atlantic Ritchfield Co.*, 651 F.2d 676, 684 (10th Cir. 1981) ("If it is established that a breach of this duty has contributed in any manner to additional pain, disability or prolonged recovery, an action for damages may be brought under the Jones Act.").

**WHEREFORE,** Plaintiff GEORGINA LINDSAY and the other similarly situated seafarers who contracted Covid-19 demand judgment against Defendant GLOBAL YACHT HOLDINGS LTD. *in personam* together with all compensatory damages and other relief this Honorable Court deems just and proper.

December 5, 2020

Respectfully submitted,

NOTARI  LAW, P.A.
*Attorney for Plaintiffs*
1820 SW 14th Court
Fort Lauderdale, Florida 33312
Telephone: (954) 257-9028

By:     /s/  Adria G. Notari
**ADRIA G. NOTARI**
Florida Bar No. 87272
E-mail: anotari@NotariLaw.com

## <u>VERIFICATION</u>

1.  I, GEORGINA LINDSAY, am over the age of eighteen and competent to make this Verification.

2.  I have read the foregoing Verified Compliant and hereby verify and represent under oath that its contents are true to the best of my knowledge, and/or information and belief.

FURTHER AFFIANT SAYETH NAUGHT.

I verify under 28 U.S.C. § 1746(2) under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2020.

_____
GEORGINA LINDSAY
Plaintiff